1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  JUANITA HERRERA,

11              Plaintiff,              No. CIV S-04-2270 PAN

12        vs.

13
    JO ANNE B. BARNHART,
14  Commissioner of Social Security,

15              Defendant.            ORDER
    _____/

16

17              The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18  proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19  Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20  Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21  discussed below, the court will deny plaintiff's motion for summary judgment or remand and

22  grant the Commissioner's cross-motion for summary judgment.

23  /////

24  /////

25  /////

26  /////

I. Factual and Procedural Background

In a decision dated June 13, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of anxiety with dizziness, headaches, and depression, but that these impairments do not meet or medically equal a listed impairment; plaintiff's statements regarding her disorders were not credible as they related to an inability to perform work activities; plaintiff has the residual functional capacity to perform work at all exertional levels; plaintiff has some work related limitations, including a fair ability to follow rules, relate to coworkers, deal with the public, behave in an emotionally stable

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1   manner, and demonstrate reliability; a significant number of jobs exist in the national economy

2   that plaintiff can perform; and plaintiff is not disabled.  Administrative Transcript ("AT") 24-25.

3   Plaintiff contends that the ALJ erred by failing to articulate specific and legitimate reasons for

4   weighing the medical evidence in the case, and that the ALJ erred by choosing the opinion of the

5   State Agency psychologist over plaintiff's specific complaints of impaired concentration.

6   II.  Standard of Review

7              The court reviews the Commissioner's decision to determine whether (1) it is

8   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11   Substantial evidence means more than a mere scintilla of evidence, but less than a

12   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21   substantial evidence supports the administrative findings, or if there is conflicting evidence

22   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25   1335, 1338 (9th Cir. 1988).

26   /////

III.  <u>Analysis</u>

    a.  <u>The ALJ Properly Weighed the Various Medical Opinions in the Record.</u>

        Numerous physicians examined plaintiff, offering varying opinions about both her physical and mental health.  In concluding that plaintiff has some work related limitations resulting from her mental illness, the ALJ adopted the findings of the State Agency psychiatrist. AT 19.  The ALJ's decision to credit this opinion over others in the record, including an examining physician, was not in error.

        The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.;  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u> , 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a non-examining professional, /////

4

1  without other evidence, is insufficient to reject the opinion of a treating or examining

2  professional.  Lester, 81 F.3d at 831.

3        The nonexamining psychiatrist at the State Agency upon whom the ALJ relied

4  concluded on September 24, 2002 that plaintiff was moderately disabled in her ability to work in

5  coordination or proximity to others without being distracted by them.  AT 292.  In addition, the

6  State Agency noted that plaintiff was moderately disabled in her ability to interact with the

7  general public and supervisors, and to set realistic goals or make plans independently of others.

8  AT 292-93.  The conclusion reached by the State Agency was that plaintiff suffered from

9  affective and anxiety disorders, AT 295, but that these disorders only mildly restricted her daily

10  living and her ability to maintain concentration, persistence, and pace, and only moderately

11  affected her social functioning.  AT 298.

12        The ALJ rejected the conclusions of Dr. Lopez, an examining physician, who saw

13  plaintiff on January 10, 2003.  AT 21.  Dr. Lopez opined that plaintiff had no impairments in her

14  ability to perform simple and repetitive tasks, some impairment with memory and concentration,

15  and some impairment in her ability to carry out complex and varied tasks.  AT 403-04.  He stated

16  that plaintiff was impaired in several areas; including, her ability to relate and interact with

17  supervisors, coworkers and the public; her ability to maintain concentration and attention, as well

18  as her ability to make generalizations and rationalizations, and to deal with day to day stressors;

19  and her ability to maintain regular attendance.  AT 404.  Dr. Lopez gave plaintiff a GAF score of

20  55.[2]

21        When faced with contrary medical opinions, the ALJ is tasked with resolving the

22  dispute.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ must provide

23  specific and legitimate reasons upon which he based his decision to credit one examining

24  physician over another.  Id.; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ's

25  findings as they relate to the evidence show that he did so in this case.

26

    [2]A GAF between 51 and 60 means moderate symptoms or some impairment in social,
    occupational, or school functioning.

1    According to the ALJ, Dr. Lopez's opinion contrasted with the relatively mild

2  objective findings from his examination.  AT 21.  In addition, Dr. Lopez's opinion contrasted

3  with other evidence in the record, including contrary medical opinions and plaintiff's testimony

4  about her daily activities.  Id.  While several of the reasons offered to reject Dr. Lopez's opinion

5  were not proper, there remains substantial evidence to support the ALJ's ultimate conclusions

6  about the weight to be assigned to the various medical opinions.

7    In his examination, Dr. Lopez found plaintiff to be anxious and sad, with rapid

8  and pressured speech, but without any abnormal thought content or delusions.  AT 401.  The ALJ

9  noted that, along with these objective observations, Dr. Lopez's diagnosis of depression, not

10  otherwise specified, anxiety, not otherwise specified, substance abuse in remission, and

11  claustrophobia did not support the conclusion that plaintiff was impaired from work.  AT 21.

12  According to the ALJ, Dr. Lopez's opinion that plaintiff was moderately impaired in six of eight

13  areas of sustained concentration and persistence, moderately limited in respect to social

14  interaction and adaptation, and could be expected to miss three to four workdays a month

15  because of her mental impairments simply did not comport with the relatively mild objective

16  findings and diagnosis.  Id.

17    This conclusion by the ALJ is to reject the opinion of Dr. Lopez is bolstered by

18  the contrary medical opinion of Dr. Bates, the second examining physician in the case.  Dr. Bates

19  examined plaintiff April 14, 2002, and noted many of the same symptoms in her examination as

20  Dr. Lopez.  These symptoms included increasing depression since the death of plaintiff's

21  husband, and episodes of anxiety on a nearly daily basis.  AT 344.  According to Dr. Bates,

22  plaintiff's Global Assessment of Functioning (GAF) score was 65-70.[3]  AT 347.

23    However, Dr. Bates found no impairments or limitations on plaintiff's ability to

24

25  [3]The Global Assessment of Functioning scale is found in the Diagnostic and Statistical Manual IV - Text Revision (DSM-IV-TR) ed. 2000 and is used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults.  A score

26  between 61 and 70 means some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships.

6

1   work.  AT 347-48.  According to Dr. Bates, plaintiff's subjective difficulties were greater than

2   anything that could be objectively observed.  AT 347.  This opinion more consistent with the

3   State Agency than with Dr. Lopez.

4          The court notes that the ALJ overstated the degree of difference between the

5   various medical opinions.[4]  However, the contrary medical conclusions of the State Agency and

6   Dr. Bates provide legitimate grounds for the ALJ to reject Dr. Lopez's opinion.  The ALJ's

7   reliance upon these various opinions to the detriment of Dr. Lopez's was not error.

8          The ALJ's findings also note the marked difference between the significant

9   limitations put forth by Dr. Lopez and plaintiff's description of her daily activities and provide an

10  additional basis upon which to weigh the medical opinions in the record.  See Magallanes, 881

11  F.2d at 752.  In his findings, the ALJ notes that plaintiff is able to perform the daily activities

12  necessary to care for herself and her seven children between the ages of five and 15.  AT 22.

13  While Dr. Lopez found plaintiff to be moderately limited in many of the skills necessary for

14  work, the ALJ determined that plaintiff's ability to care for herself and her children supported a

15  less restrictive conclusion as it concerned plaintiff's mental impairments; a conclusion more

16  consistent with the opinion of the State Agency.  AT 23.

17         In the midst of these specific and legitimate reasons for discounting the opinion of

18  Dr. Lopez, the ALJ relied upon two that are contrary to the evidence in this case or improper

19  under the law.  The ALJ found that Dr. Lopez's conclusions should be discounted because they

20  came after a single examination of the plaintiff.  AT 21.  In addition, the ALJ rejected Dr.

21  Lopez's opinion because it was obtained by plaintiff in order to produce evidence for her

22  application is in error.  While specific and legitimate reasons supported by substantial evidence

23

24      [4]The ALJ states that Dr. Lopez's opinion differs "sharply" with other evidence in the
    record.  AT 21.  This finding overstates the difference in medical opinions and gives the
    impression that Dr. Lopez's examination was an outlier compared to the other evidence in the
25  record.  This was not the case.  Dr. Lopez's GAF score for plaintiff was significantly lower than
    Dr. Bates'; however, it was well within the range offered by experts at San Joaquin.
26  Furthermore, the Dr. Lopez's opinion is consistent with the State Agency conclusion that
    plaintiff had some impairment in her ability to perform many of the skills essential for work.
    What differed between these opinions was the degree of impairment.

1   remain to validate the ALJ's findings, judging Dr. Lopez's credibility on these two bases was

2   improper.

3           Dr. Lopez's brief examination of plaintiff does not provide a legitimate basis in

4   this case to discount his medical opinion.  The mere fact that Dr. Lopez saw plaintiff on one

5   occasion can hardly be considered relative given that the other opinions upon which the ALJ

6   relied were as limited in their basis of knowledge.  As an examining physician, Dr. Bates also

7   only saw plaintiff on one occasion.  Indeed, the opinion in which the ALJ put the most credence,

8   the report of the State Agency, was based upon on a review of plaintiff's medical records and did

9   not entail *any* examination of plaintiff.  Absent some evidence of a cursory, less than thorough,

10  or otherwise incompetent examination, the brevity of Dr. Lopez's contact with plaintiff does not

11  provide a legitimate basis to reject his opinion given the nature of the other opinions upon which

12  the ALJ relied to reach his conclusions.

13          Similarly, the ALJ erred in discounting Dr. Lopez's credibility because of the

14  context in which it was developed.  The ALJ noted that Dr. Lopez's opinion was offered by

15  plaintiff and acquired as part of her application for benefits.  AT 21.  The purpose for which a

16  medical opinion is solicited does not provide a legitimate basis to reject that opinion.  Lester, 81

17  F. 3d at 832.

18          There is no evidence of any improprieties in this case that would permit the ALJ

19  to discredit the opinion of Dr. Lopez.  See Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988);

20  Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D.Or. 1993).  Indeed, the ALJ recognized the

21  legitimacy of Dr. Lopez's professional medical opinion, yet considered it relevant that the

22  opinion was offered at plaintiff's request.  AT 21.  As a result, the ALJ remained cognizant of the

23  fact that it Dr. Lopez was hired by plaintiff to generate evidence to support plaintiff's case at the

24  hearing.  Id.  The established law in this circuit does not permit the ALJ to discredit Dr. Lopez's

25  opinion on this basis.

26          In spite of these two improper justifications, the ALJ did not error by crediting the

8

1    State Agency opinion over Dr. Lopez's.  Removing the ALJ's illegitimate justifications from the

2    opinion may result in less than a preponderance of evidence to support the findings; however,

3    more than a mere scintilla clearly remains.  Andrews, 53 F.3d at 1039.  The objective medical

4    evidence, the differing medical opinions, and plaintiff's testimony of her daily activities support

5    the ALJ's conclusions about the level of plaintiff's mental impairment.  The ALJ's rejection of

6    Dr. Lopez's medical opinion was not in error.

7              Similarly, it cannot be said that the ALJ erred in the weight given to plaintiff's

8    primary treating physician, Dr. Brown.  Dr. Brown treated plaintiff from at least February 2000

9    through the decision date of this hearing.  While Dr. Brown offered many insights into plaintiff's

10   condition, she gave no definitive opinion of plaintiff's functional limitations upon which the ALJ

11   could rely in his findings.

12             The ALJ stated that he gave reduced weight to Dr. Brown's opinion.  AT 22.  The

13   basis for this decision was the inconsistency between Dr. Brown's conclusions about plaintiff's

14   ailments and plaintiff's daily activities.  Id.  However, in spite of the ALJ's statement, upon

15   examination of the record in the case, it is not apparent that Dr. Brown even offered any contrary

16   or relevant opinions, or that the ALJ did in fact give reduced weight to Dr. Brown.

17             Dr. Brown notes in her records plaintiff's frequent mental impairments; including

18   "severe anxiety" on April 21, 2000, AT 471, increasing anxiety on June 3, 2000, AT 468,

19   continuing panic attacks on September 13, 2000, AT 463, "major depression" (undated), AT 452,

20   "severe depression" on May 31, 2001, AT 450, "severe depression with somatization" on June

21   27, 2001, AT 449, "abnormal grief reaction" on July 25, 2001, causing plaintiff to be "quite

22   dysfunctional," AT 446, "severe depression" on October 11, 2001, AT 440, "severe anxiety" on

23   November 7, 2001, AT 437, psychiatric problems on November 21, 2001, AT 436, and "severe

24   cyclic depression" on March 1, 2002, AT 431.  The record reflects that Dr. Brown recognized the

25   need for appropriate psychiatric evaluation and treatment of the plaintiff.  As a result, Dr. Brown

26   frequently sought referrals for plaintiff to mental health.  AT 431, 434, 436, 437, 439.   Dr.

1    Brown noted that plaintiff's anxiety and depression were "outside the realm of [Dr. Brown's]

2    family practice, AT 436, and wondered if there "was anything [she could] contribute to

3    [plaintiff's] care," AT 437.  Despite her frequent opinions about the nature of plaintiff's

4    condition, at no time did Dr. Brown offer any opinion regarding the extent of plaintiff's

5    functional limitations.

6            Dr. Brown's opinions that plaintiff suffers from depression or anxiety are

7    consistent with the other medical opinions in the record.  Dr. Bates stated that plaintiff suffered

8    from anxiety disorder not otherwise specified and a history of depressive disorder not otherwise

9    specified.  AT 347.  The State Agency determined plaintiff suffered from affective disorders,

10   anxiety related disorders, and depression.  AT 295-96.  Unlike Dr. Brown, however, these other

11   medical experts took their opinions one step further, offering opinions regarding plaintiff's

12   functional limitations upon which the ALJ relied to determine plaintiff's residual functional

13   capacity.

14           Indeed, Dr. Brown's statements that plaintiff suffered from severe depression and

15   anxiety were echoed by the ALJ in his findings.  AT 16.  The ALJ found plaintiff suffered from

16   "severe medically determinable impairments consisting of anxiety with dizziness and headaches

17   and history of depression," AT 16, a conclusion similar to that repeated by Dr. Brown in her

18   treatment notes.  Given the lack of any opinion about plaintiff's functional limitations and the

19   similarity in their findings, it is not apparent that the ALJ even gave reduced weight to Dr.

20   Brown's opinion, despite her statement to the contrary.  AT 22.

21           Furthermore, given the consistency of Dr. Brown's diagnosis with the other

22   evidence in the record and her lack of any conclusion about plaintiff's functional limitations, it is

23   clear that the ALJ did not reject Dr. Brown's medical opinion.  As discussed above, when

24   contradicted by medical evidence in the record, specific and legitimate reasons are required to

25   reject the opinion of the treating physician.  Lester, 81 F.3d at 830.  However, reductions in the

26   weight given to treating doctors' opinions do not equal rejection of those opinions.  SSR 96-2p.

10

1    While the treating sources opinions are generally entitled to great deference, the

2    decision to give controlling weight to a medical opinion is only required when that opinion is not

3    inconsistent with other substantial evidence in the record.  Id.  Plaintiff contends that Dr.

4    Brown's opinions that plaintiff suffered from severe depression evidence a greater functional

5    limitation than that found by the ALJ.  Plaintiff's Memorandum at 17:1-3.  While it is certainly

6    not apparent in the record, to the extent that Dr. Brown makes any conclusions about plaintiff's

7    functional limitations, the ALJ provided ample grounds in the opinion to give it less weight.  As

8    the ALJ noted in his findings, the objective medical evidence, contrary medical opinions, and

9    plaintiff's daily activities provide the substantial evidence required to find that plaintiff's mental

10   impairments are not so severe to conclude she is disabled.

11   As with the medical evidence in this case, the ALJ properly weighed the evidence

12   provided by non-medical sources, including Ms. Lewis, plaintiff's licensed therapist.  As a

13   licensed therapist, Ms. Lewis is not entitled to the preferential weighting given to medical

14   opinions.  Lester, 81 F.3d 821; 20 C.F.R. § 416.927.  Consequently, reasons to discredit the

15   testimony of this "other source," 20 C.F.R. § 416.913(d)(1), need only be germane to the witness.

16   Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

17   In his opinion, the ALJ offered multiple reasons to discount Ms. Lewis' opinion.

18   AT 20.  The lack of any mental status evaluation to support Ms. Lewis' conclusions about

19   plaintiff's disability was the primary reason.  Id.  Furthermore, as with other opinions, the

20   inconsistency between Ms. Lewis' conclusions and the objective medical evidence, the various

21   medical opinions, and plaintiff's daily activities were a proper basis upon which to reject Ms.

22   Lewis' opinion.  Id.

23   The record supports the ALJ's determination of plaintiff's residual functional

24   capacity.  The ALJ properly relied upon medical evidence in the record, crediting the opinions of

25   the State Agency doctor while providing specific and legitimate reasons for rejecting the

26   opinions of an examining physician, Dr. Lopez.  In addition, the reduced weight given by the

1  ALJ to  Dr. Brown's opinions, to the extent that Dr. Brown offers any opinions, as well as the

2  ALJ's rejection of Ms. Lewis, is proper in light of the evidence in the record.  The ALJ did not

3  error in weighing the medical opinions in this case.

4        b.  <u>Substantial Evidence Supports the ALJ's Determination of Plaintiff's Residual</u>

5        <u>Functional Capacity</u>.

6              The ALJ adopted the findings of the State Agency doctors who examined

7  plaintiff's medical records on September 24, 2002.  In this assessment, the State Agency found

8  plaintiff had mild restrictions in daily living, moderate difficulties in maintaining social

9  functioning, and mild difficulties maintaining concentration, persistence, and pace.  AT 16.

10  These impairments formed the basis of plaintiff's residual functional capacity as determined by

11  the ALJ.  The ALJ's reliance on the September 2002 State Agency assessment was not in error.

12              To reach his conclusions as to plaintiff's residual functional capacity, the ALJ

13  relied heavily upon the treatment records in this case.  AT 19.  As discussed above, the ALJ

14  properly weighed the medical evidence in this case, ultimately adopting the findings of the

15  September 2002 State Agency assessment of plaintiff.  In making this determination, the ALJ

16  rejected an assessment by the State Agency from April 25, 2002, that found plaintiff to be

17  moderately, as opposed to mildly, impaired in concentration, persistence, and pace.  AT 315.

18  The ALJ also rejected plaintiff's subjective complaints and her testimony of disabling mental

19  impairments.

20              Multiple sources support the ALJ's findings that plaintiff's impairment in

21  concentration is mild, as opposed to moderate.  The State Agency opinion from September, the

22  medical opinion of Dr. Gates, and the evidence of treatment, or the lack thereof, by the San

23  Joaquin County Mental Health department all provide substantial medical evidence to support

24  the ALJ's conclusion.  In addition, the level of activity to which plaintiff testified provided

25  further evidence upon which the ALJ relied to determine plaintiff's residual functional capacity.

26              The level of plaintiff's daily functioning provided a proper basis upon which the

1   ALJ rejected plaintiff's subjective complaints of disability.   The ALJ properly identified

2   inconsistencies between plaintiff's descriptions of her daily activities and her claimed level of

3   impairment.   AT 22.   In addition, the ALJ found that plaintiff's complaints were not credible as

4   they could not be supported by the medical evidence.   Id.   The ALJ's findings about plaintiff's

5   credibility were proper and cannot be disturbed by this court.

6           The ALJ determines whether a disability applicant is credible, and the court defers

7   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.   See, e.g.,

8   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).   If credibility is critical, the ALJ must make

9   an explicit credibility finding.   Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

10  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

11  supported by "a specific, cogent reason for the disbelief").

12          In evaluating whether subjective complaints are credible, the ALJ should first

13  consider objective medical evidence and then consider other factors.   Bunnell v. Sullivan, 947

14  F.2d 341, 344 (9th Cir. 1991) (en banc).   If there is objective medical evidence of an impairment,

15  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

16  medication, treatment and functional restrictions.   See id. at 345-47.   The ALJ also may consider:

17  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

18  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

19  prescribed course of treatment, and (3) the applicant's daily activities.   Smolen v. Chater, 80 F.3d

20  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

21  55406-01; SSR 88-13.   Work records, physician and third party testimony about nature, severity

22  and effect of symptoms, and inconsistencies between testimony and conduct also may be

23  relevant.   Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).   A failure

24  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

25  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

26  impairment.   See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

1   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

2   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900

3   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

4   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

5   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

6          According to the ALJ, plaintiff's complaints of mental impairment were

7   inconsistent with her ability to function effectively on a daily basis.  AT 22.  The ALJ found

8   plaintiff's numerous physical and mental complaints to be incompatible with the tasks plaintiff

9   performed everyday.  Id..  As plaintiff testified, those tasks included taking care of seven children

10  between the ages of five and 15, AT 34-36, cooking, AT 36, housekeeping, AT 36-37, mowing

11  the lawn, AT 37, driving, AT 38, visiting relatives, AT 38, going to church, AT 39, and

12  managing household finances, AT 46.  For the ALJ, the similarities between managing a

13  household of eight and work necessitated a residual functional assessment less restrictive than

14  that put forth by plaintiff.  AT 23.

15         In addition, plaintiff's subjective complaints of impairment did not comport with

16  the medical evidence contained in the record or plaintiff's own testimony.  AT 22.  The ALJ

17  noted that plaintiff's various physical and mental impairments could not be supported by

18  objective medical evidence.  Id..  Despite her complaints, the ALJ found that plaintiff's medical

19  records show no evidence of clinical abnormalities to support plaintiff's complaints of abdominal

20  pain and constipation.  Id.; AT 360 ("no obstruction"); AT 363 (no "acute medical problems that

21  required intervention"); AT 375 ("no significant abnormality").  In addition, the ALJ found

22  significant gaps in time in plaintiff's treatment and that such treatment, when offered, was

23  generally conservative.  Id.  When more aggressive treatment was offered for plaintiff's mental

24  illness, plaintiff refused to attend therapy.  Id.; AT 157.

25         The ALJ stated that plaintiff complained that her medication was not effective.

26  Id.  However, in spite of this, plaintiff sought chemical solutions to her problems, as opposed to

1  other treatments or therapies. Id.; AT 157.  Furthermore, plaintiff stated that she occasionally

2  received relief from her medications without side effects.  AT 22; AT 41; AT 101.  As evaluated

3  by the ALJ, such actions are not consistent with plaintiff's statements of disability, and cast

4  doubt upon her credibility.

5          The ALJ cited to the lack of objective findings in the medical evidence to support

6  his opinion that plaintiff's complaints of moderate impairment were not credible.  This

7  conclusion was bolstered by the numerous inconsistencies between plaintiff's complaints and her

8  daily physical activities.  The factors considered by the ALJ in his evaluation of plaintiff's

9  credibility were all valid and supported by substantial evidence in the record.

10          Substantial evidence supports the ALJ's conclusion that plaintiff is only mildly

11  impaired in her ability to maintain concentration, persistence, and pace.  The medical opinions

12  upon which the ALJ relied fully support her conclusions.  The ALJ's discounting of contrary

13  opinions and plaintiff's subjective complaints that indicated a greater level of impairment was

14  not in error.

15          The ALJ's decision is fully supported by substantial evidence in the record and

16  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

17          1.  Plaintiff's motion for summary judgment or remand is denied, and

18          2.  The Commissioner's cross-motion for summary judgment is granted.

19  DATED: June 5, 2006.

20

21

22  UNITED STATES MAGISTRATE JUDGE

23

24

25  ggh13
    Herrera.ss.wpd

26